# COPY

1

1                **IN THE UNITED STATES DISTRICT COURT**

2              **FOR THE MIDDLE DISTRICT OF ALABAMA**

3                    **EASTERN DIVISION**

4    **UNITED STATES OF AMERICA,**

5
                     **vs.**         **CR NO.:  3:03cr212-F**

6    **ARBERT TYRAIL SMITH,**

7
                 **Defendant.**

8

9

10                  **\* \* \* \* \* \* \* \* \* \***

11                   **CHANGE OF PLEA**

12                  **\* \* \* \* \* \* \* \* \* \***

13

14

15           **BEFORE THE HONORABLE JUDGE VANZETTA McPHERSON,**

16    **UNITED STATES MAGISTRATE, at Montgomery, Alabama on Monday,**

17    **May 24, 2004, commencing at 10:28 a.m.**

18
    **FOR THE GOVERNMENT:**      **Mr. Ken Brunson**
19                         **U.S. Attorney**
                           **U.S. Attorney's Office**
20                         **One Court Square, Suite 201**
                           **Montgomery, Alabama  36104**
21
    **FOR THE DEFENDANT:**         **Ms. Roianne Houlton Conner**
22                         **Law office of Roianne Conner**
                           **250 Wynton Blount Loop**
23                         **Montgomery, Alabama  36117**

24           **Proceedings reported stenographically;**

25             **transcript produced by computer**

2

```
 1      (The following proceedings were heard before the Honorable

 2      Vanzetta McPherson, United States Magistrate, at Montgomery,

 3      Alabama, on Monday, May 24, 2004, commencing at 10:28 a.m.:)

 4              THE COURT:  United States versus Arbert Tyrail

 5      Smith, Case Number 03-212-F.  The defendant is represented

 6      by his attorney, Ms. Roianne Houlton Conner.  The government

 7      is represented by Mr. Kent Brunson.

 8              Swear the defendant.

 9                      (Defendant sworn.)

10              MR. BRUNSON:  Your Honor?

11              THE COURT:  Yes.

12              MR. BRUNSON:  Before you proceed, may I point

13      out -- and Ms. Conner was telling Mr. Long about this --

14      there is an original plea agreement that has been executed

15      by the parties.  Mr. Franklin's name is not on there.  His

16      name is on it; the signature is not.  I consider that to be

17      an administrative matter that can be taken care of by the

18      end of the day.

19              THE COURT:  Thank you.  And are there any

20      variations between the agreement provided to me and the

21      final?

22              MS. CONNER:  No, ma'am.

23              MR. BRUNSON:  No, Your Honor.

24              MS. CONNER:  Same document.

25              MR. BRUNSON:  Yes, Your Honor.
```

1          THE COURT:  Thank you.

2          Mr. Smith, the Court is advised that you wish to

3   change your plea of not guilty to a plea of guilty in this

4   proceeding; is that correct?

5          THE DEFENDANT:  Yes, ma'am.

6          THE COURT:  You are charged with one count in the

7   indictment with knowingly possessing a firearm or ammunition

8   in/or affecting interstate commerce, having been convicted

9   of a crime punishable by a term in excess of one year.  Do

10  you understand that charge?

11         THE DEFENDANT:  Yes, ma'am.

12         THE COURT:  You're entering your plea pursuant to

13  Rule 11(c)(1)(b) when you entered a plea agreement with the

14  government.

15         What is your full name?

16         THE DEFENDANT:  Arbert Tyrail Smith.

17         THE COURT:  And is your first name A-R-B-E-R-T?

18         THE DEFENDANT:  Yes, ma'am.

19         THE COURT:  And your second name T-Y-R-A-I-L?

20         THE DEFENDANT:  Yes, ma'am.

21         THE COURT:  How far did you go in school?

22         THE DEFENDANT:  Tenth.  Tenth grade.

23         THE COURT:  Do you have a GED?

24         THE DEFENDANT:  No, ma'am.

25         THE COURT:  How old are you?

1           THE DEFENDANT:  28.

2           THE COURT:  Have you been treated at all for any

3    mental illness?

4           THE DEFENDANT:  No, ma'am.

5           THE COURT:  Have you ever been treated for

6    addiction to narcotic drugs of any kind?

7           THE DEFENDANT:  No, ma'am.  I've been to a SAP

8    class.

9           THE COURT:  Okay.  Were you ordered to go by a

10   Court?

11          THE DEFENDANT:  Yes, ma'am.

12          THE COURT:  When?

13          THE DEFENDANT:  In '97.  I'm not sure.  I'm

14   thinking close enough to '97.

15          THE COURT:  Are you currently being treated for

16   any addiction?

17          THE DEFENDANT:  No, ma'am.

18          THE COURT:  Are you currently being treated by a

19   physician for any condition?

20          THE DEFENDANT:  No, ma'am.

21          THE COURT:  You're taking no medication?

22          THE DEFENDANT:  No, ma'am.

23          THE COURT:  Do you fully understand the nature of

24   these proceedings?

25          THE DEFENDANT:  Yes, ma'am.

```
 1              THE COURT:  Are you fully satisfied with the
 2    counsel representation and advice given to you in this case
 3    by your attorney, Ms. Conner?
 4              THE DEFENDANT:  Yes, ma'am.
 5              THE COURT:  Is your willingness to plead guilty
 6    the result of discussions that you have with her?
 7              THE DEFENDANT:  Yes, ma'am.
 8              THE COURT:  Is second counsel present?
 9              MS. CONNER:  This is Jeff Rainer.  I introduced
10    you.
11              THE COURT:  Right.
12              MS. CONNER:  He is with my office.  Jeff has been
13    assisting me with this.
14              THE COURT:  Okay.  Mr. Smith, have you also spoken
15    about this charge and this plea agreement with Mr. Rainer?
16              THE DEFENDANT:  Yes, ma'am.
17              THE COURT:  And has he provided assistance to you
18    in understanding your plea agreement and the case?
19              THE DEFENDANT:  Yes.
20              THE COURT:  Are you satisfied with the
21    representation given to you by Mr. Rainer?
22              THE DEFENDANT:  Yes, ma'am.
23              MS. CONNER:  Your Honor, we also discussed he has
24    a state case.  The drug case, which was part -- which
25    brought forth this gun case.
```

```
1              THE COURT:  Yes.

2              MS. CONNER:  And he is represented by Mr. Joe

3    Dean.  We have been working together with Mr. Dean.  And as

4    a result, Friday afternoon, we had a complete conference

5    call with all of us present to discuss it.  So he has also

6    discussed this case with Mr. Dean.

7              THE COURT:  I see.

8              Mr. Smith, based upon what Ms. Conner just said,

9    are you -- did you discuss the implications of your plea in

10   this case with Mr. Dean as well?

11             THE DEFENDANT:  Yes, ma'am.

12             THE COURT:  So you've had a total of three lawyers

13   in this case who have assisted you in understanding all of

14   the consequences of the disposition of this case?

15             THE DEFENDANT:  Yes, ma'am.

16             THE COURT:  And you're still convinced on entering

17   a guilty plea?

18             THE DEFENDANT:  Yes, ma'am.

19             THE COURT:  All right.  And you are aware that one

20   or more of those lawyers may also have been talking to

21   Mr. Brunson?

22             THE DEFENDANT:  Yes, ma'am.

23             THE COURT:  About negotiating a plea agreement in

24   this case?

25             THE DEFENDANT:  Yes, ma'am.
```

1          THE COURT:  And when you agreed to plead guilty,

2    did you do so knowing that they had been taking to

3    Mr. Brunson about this case?

4          THE DEFENDANT:  Yes, ma'am.

5          THE COURT:  Is there anything that you believe you

6    have agreed to do or the government has agreed to do that is

7    not in the plea agreement?

8          THE DEFENDANT:  No, ma'am.

9          THE COURT:  Do you understand all of the terms

10   from the plea agreement?

11         THE DEFENDANT:  Yes.

12         THE COURT:  Other than the plea agreement, has

13   anyone made any promise or assurance to you about what will

14   happen to you if you plead guilty?

15         THE DEFENDANT:  No, ma'am

16         THE COURT:  Has anyone said or done anything to

17   force or coerce you to plead guilty?

18         THE DEFENDANT:  No, ma'am.

19         THE COURT:  Do you understand that the terms of

20   the plea agreement are merely recommendations to the Court

21   that are not binding on the Court?

22         THE DEFENDANT:  Yes, ma'am.

23         THE COURT:  This is a binding guilty plea, is it

24   not?

25         MR. BRUNSON:  Yes, Your Honor.

1          MS. CONNER:  Yes, ma'am.

2          MR. BRUNSON:  It is 11(c)(1)(b).

3          THE COURT:  Do you understand, Mr. Smith, in

4    connection with what I just said, namely, that this is --

5    that the agreement is not binding on the Court; do you

6    understand that even if the Court sentences you differently

7    from the recommendation in the agreement, you will not be

8    able to withdraw your plea?

9          THE DEFENDANT:  Yes, ma'am.

10         THE COURT:  All right.  The government has agreed

11   to recommend a three-level reduction in you applicable

12   offense level in your agreement.  Do you understand that?

13         THE DEFENDANT:  Yes, ma'am.

14         THE COURT:  Also agreed to recommend a sentence at

15   the low end of the guideline range and a downward departure

16   of three offense levels, provided that you give substantial

17   assistance.  Those are three separate things.

18         As a result of the three-level reduction, low end

19   of the guideline range, and another downward departure of

20   three offense levels, from a practical standpoint,

21   Mr. Brunson, Ms. Conner, what is -- what could the ultimate

22   sentence be?

23         MR. BRUNSON:  Your Honor, I haven't calculated the

24   three-level downward departure in my preparation of the

25   guideline range.  For this offense, again, stating that I

1    have not calculated three-level reduction -- I've got my

2    guidelines manual; I could certainly do that -- I calculate

3    that his sentence would range from 37 months to 96 months.

4    And that's a broad range because I don't know his exact

5    criminal history.  And I --

6                THE COURT:  That's three years to -- help

7    me -- eight --

8                MR. BRUNSON:  Ninety-six months would be --

9                MS. CONNER:  Eight years.

10               THE COURT:  Three to eight years.

11               MR. BRUNSON:  Yes, Your Honor.  And taking off

12   three levels by this quick calculation would be 27 to 71

13   months, 27 being the low end of Criminal History Category 1,

14   which I quite candidly don't believe he'll qualify for

15   because he is, as the nature of this offense, a prior felon;

16   and 71 being the high level of Criminal History Category 6.

17               THE COURT:  So really, the low end of the

18   appropriate guideline range for Mr. Smith would have to take

19   into consideration his prior felony.

20               MS. CONNER:  Yes, ma'am.

21               THE COURT:  Between three and eight, then, is his

22   range.  And between roughly three -- and you said --

23               MR. BRUNSON:  Twenty-seven months to 71 months.

24   Actually, under the plea agreement, I said the high end.

25   But that wouldn't be a factor because the plea agreement

1    calls for a sentence at the low end.  So it would be 27

2    months to 57 months, which would be just two years and three

3    months to 57.  That would be four years and eight months.

4           THE COURT:  That's just about where I come out

5    when I look at the top, or the maximum of the range being

6    eight years.  We look like we may be coming out between four

7    and five years.

8           I wanted to make that armchair calculation,

9    Mr. Smith.  I don't want you agreeing to all of these

10   reductions without knowing, in practical terms, what this

11   means.

12          And in practical terms, what we are talking about

13   is between four and five years.  And that is an estimate,

14   because until the probation office does the pre-sentence

15   report and brings back concrete, objective information about

16   your criminal history, the Court really will not know.

17          But I wouldn't want you standing there thinking 12

18   years.  And I wouldn't want you standing there thinking one

19   year.  So that is why we are doing this exercise so that you

20   understand that we're not talking two years.  But on the

21   other hand, we're not talking ten years either.

22          Do you understand that?

23          THE DEFENDANT:  Yes, ma'am.

24          THE COURT:  Now, the further downward departure

25   you have not computed, right?

1        MR. BRUNSON:  That's correct.  And it's not

2    appropriate at this time.

3        THE COURT:  All right.  It is contingent,

4    Mr. Smith, on your providing substantial assistance.  Do you

5    understand that the government and only the government will

6    determine whether your assistance is substantial?

7        THE DEFENDANT:  Yes, ma'am.

8        THE COURT:  And do you understand that providing

9    substantial assistance does not mean merely giving

10   information.  It means more than that.  You can't just give

11   information.  It may also require testifying in court, in

12   open court.  Do you understand that?

13       THE DEFENDANT:  Yes, ma'am.

14       THE COURT:  You look quizzical.  Do I need to go

15   over that again?

16       THE DEFENDANT:  No, ma'am.

17       THE COURT:  Do you understand that testifying in

18   open court may mean testifying, looking at the very people

19   you are giving information about?

20       THE DEFENDANT:  Yes.

21       THE COURT:  All right.  Do you understand that if

22   you testify falsely, that cannot be used against you in this

23   case; but if you do that, the government can ultimately

24   charge you with perjury and prosecute you for perjury?  Do

25   you understand that?

1              THE DEFENDANT:  Yes, ma'am.

2              THE COURT:  You still look a little hesitant,

3    Mr. Smith.  And I want to make sure you understand these

4    things.  I can understand your looking at it with some

5    skepticism in your mind about whether this is -- whether

6    ultimately that's something you really want to do.  I'm not

7    concerned with that right now.

8              What I am concerned with is whether or not you

9    understand that's what you've agreed to do in this plea

10   agreement.

11             THE DEFENDANT:  Yes, ma'am.

12             THE COURT:  All right.  The indictment charges

13   just one count?

14             MS. CONNER:  Yes, ma'am.

15             MR. BRUNSON:  Yes, Your Honor.

16             THE COURT:  Fine.  So there won't be future

17   dismissals.

18             MR. BRUNSON:  No, Your Honor.

19             THE COURT:  Mr. Smith, do you understand that if

20   you enter a plea of guilty to count -- to the sole count in

21   the indictment that you may be deprived of your right to

22   vote, your right to hold public office, your right to serve

23   on a jury, and your right to possess a firearm?

24             THE DEFENDANT:  Yes, ma'am.

25             THE COURT:  Do you understand that if you are

1    sentenced to serve a term of imprisonment, you will not be

2    released on parole because in the federal system, parole has

3    been abolished?

4              THE DEFENDANT:  Yes, ma'am.

5              THE COURT:  Do you understand that you will also

6    be sentenced to serve a term of supervised release after you

7    get out of prison that will have terms and conditions

8    attached to it?  If you violate any of those terms and

9    conditions and the Court finds you guilty, you may be

10   returned to prison to serve an additional term.  Do you

11   understand that?

12             THE DEFENDANT:  Yes, ma'am.

13             THE COURT:  Do you understand that if that

14   happens, it will not violate this plea agreement?

15             THE DEFENDANT:  Yes, ma'am.

16             THE COURT:  Have you had a chance to discuss with

17   Ms. Conner, Mr. Rainer, or Mr. Dean the sentencing

18   guidelines in this case?

19             THE DEFENDANT:  Yes, ma'am.

20             THE COURT:  And they have explained to you how

21   those guidelines affect you?

22             THE DEFENDANT:  Yes.

23             THE COURT:  And you understand that neither your

24   lawyers nor Mr. Brunson can ignore those guidelines?

25             THE DEFENDANT:  Yes, ma'am.

1            THE COURT:  Nor the Court, for that matter.

2            Is there an appeal waiver here?

3            MR. BRUNSON:  No, Your Honor.

4            MS. CONNER:  No, ma'am.

5            THE COURT:  All right.  Do you understand,

6    Mr. Smith, that you retain or you still have your right to

7    appeal the sentence of the Court?

8            THE DEFENDANT:  Yes, ma'am.

9            THE COURT:  You have waived your right to appeal.

10   And the government has not waived its right to appeal; that

11   is, going to a higher court if you wish to challenge the

12   sentence in this case.  You understand you can do that?

13           THE DEFENDANT:  Yes, ma'am.

14           THE COURT:  And nothing in this plea agreement

15   stops you from doing that?

16           THE DEFENDANT:  Yes, ma'am.

17           THE COURT:  Do you understand that you have a

18   continuing right in this case to plead not guilty?

19           THE DEFENDANT:  Yes.

20           THE COURT:  If you persist in pleading not guilty,

21   you will have a trial, a jury trial; and it would be the

22   government's burden at trial to prove your guilt beyond a

23   reasonable doubt.  Do you understand that?

24           THE DEFENDANT:  Yes, ma'am.

25           THE COURT:  Do you understand, Mr. Smith, that at

1    a trial, you'd have the following constitutional rights:

2    the right to see and hear all of the witnesses against you

3    and have them cross-examined?

4              THE DEFENDANT:  Yes, ma'am.

5              THE COURT:  The right to be represented by your

6    attorney?

7              THE DEFENDANT:  Yes.

8              THE COURT:  The right to testify on your own

9    behalf or to decline to testify should you choose not to do

10   so?

11             THE DEFENDANT:  Yes, ma'am.

12             THE COURT:  Without having that used against you

13   by the jury?

14             THE DEFENDANT:  Yes, ma'am.

15             THE COURT:  Do you also understand that you have

16   the right to the issuance of subpoenas to compel the

17   attendance of witnesses for you?

18             THE DEFENDANT:  Yes, ma'am.

19             THE COURT:  Do you understand that if you enter a

20   plea of guilty, you waive your right to trial, and all of

21   those Constitutional rights I just reviewed with you?

22             THE DEFENDANT:  Yes, ma'am.

23             THE COURT:  Having stated to the Court that you

24   understand the charge against you, the terms of the plea

25   agreement, the Constitutional rights that you waive, and

1    your right to a trial that you waive, tell the Court how you

2    plead.

3                    THE DEFENDANT:  Guilty.

4                    THE COURT:  And on 25 June 2003 in Auburn,

5    Alabama, what did you do?

6                    THE DEFENDANT:  Possessed firearms.

7                    THE COURT:  Which ones?

8                    THE DEFENDANT:  A Glock Model 17 nine-millimeter

9    pistol, serial number DNL242US; a Tauras Model PT140 .40

10   caliber semi-automatic pistol, serial number SVE02036; and a

11   North China Industrial MAK90 SKS, 7.62 millimeter rifle,

12   serial number 931873.

13                   THE COURT:  Those are the firearms that you

14   possessed on that day at that time.  Was that in Lee County,

15   Alabama?

16                   THE DEFENDANT:  Yes, ma'am.

17                   THE COURT:  And had you, at that time, been

18   convicted of felonies?

19                   THE DEFENDANT:  Yes, ma'am.

20                   THE COURT:  Or a felony.  Satisfied -- oh, do the

21   parties stipulate that these guns traveled in interstate

22   commerce, Ms. Conner?

23                   MS. CONNER:  Yes, ma'am.

24                   THE COURT:  Mr. Brunson?

25                   MR. BRUNSON:  Yes, Your Honor.

1          THE COURT:  Otherwise satisfied?

2          MS. CONNER:  Yes, ma'am.

3          THE COURT:  Mr. Brunson?

4          MR. BRUNSON:  Yes, Your Honor.

5          THE COURT:  It is the finding of the Court in the

6    case of United States versus Arbert Tyrail Smith that the

7    defendant is fully competent and capable of entering an

8    informed plea, that the defendant is aware of the nature of

9    the charges and the consequences of the plea, and that the

10   plea of guilty is a knowing and voluntary plea supported by

11   an independent basis in fact containing each of the

12   essential elements of possession of a firearm after being a

13   felon.

14          The Court will, therefore, recommend that the plea

15   be accepted and that the defendant be adjudged guilty of

16   that offense.

17          Do you understand, Mr. Smith, that the probation

18   office will prepare a pre-sentence investigation report for

19   the Court?

20          THE DEFENDANT:  Yes, ma'am.

21          THE COURT:  That you will expected to cooperate by

22   giving information and answering questions?

23          THE DEFENDANT:  Yes, ma'am.

24          THE COURT:  That you will have an opportunity

25   before sentencing to read the report and make any objections

1    you have?

2            THE DEFENDANT:  Yes, ma'am.

3            THE COURT:  And that you will have a further

4    opportunity to object to the report at sentencing?

5            THE DEFENDANT:  Yes, ma'am.

6            THE COURT:  Anything further, Counsel?

7            MR. BRUNSON:  No, Your Honor.

8            MS. CONNER:  No, ma'am.

9            THE COURT:  All right.  This concludes the guilty

10   plea proceeding.

11           Mr. Smith has been arrested on this date pursuant

12   to a petition to revoke his pretrial release.  And he is now

13   in the custody of a marshal, and we need to set that for

14   hearing.

15           MR. BRUNSON:  Your Honor, may I ask, if a hearing

16   is really necessary -- and the reason I say that, under the

17   provisions of Title 18, Section 3143, a person is due to be

18   kept in custody after sentencing -- after plea of guilty

19   pending sentencing unless there are exceptional

20   circumstances that warrant their release.

21           Prior to today -- in fact, I believe it was on

22   Friday -- Ms. Conner and I had talked, and I had told her

23   that I would not oppose Mr. Smith being released.

24           At that time, I was unaware of the foundation for

25   the warrant that has been served this morning.  With that in

1    light, I submit to the Court that Title 18, Section 3143

2    requires the Court to keep Mr. Smith in custody, and no

3    hearing would be necessary.

4              THE COURT:  Well, I think that Mr. Smith must be

5    kept in custody pending a hearing, if the Court finds one

6    necessary.

7              Ms. Conner?

8              MS. CONNER:  Your Honor, we would ask for a

9    hearing.  Mr. Smith tells me that he had changed jobs, but

10   that he had attempted to contact the pretrial release

11   officer about the new employment.

12             He also has concerns -- or we do -- about the

13   results on this marijuana test, as he has stated to me that

14   he doesn't believe that it has basis.

15             Of course, I just spoke to him sitting here at the

16   table.

17             THE COURT:  I understand.  Is this either one of

18   yours?

19             MR. BRUNSON:  It's Mr. Dillon's case, Your Honor.

20             THE COURT:  Mr. Dillon's.  Okay.

21             MR. BRUNSON:  And as I stated, Your Honor, I was

22   not aware of that until sitting in the courtroom this

23   morning.

24             MS. CONNER:  Nor were we.  Your Honor, we would

25   request a hearing.  And if he is --

1          THE COURT:  All right.  Well, I think I'm going to

2    go ahead and do one just to be --

3          MS. CONNER:  Yes, ma'am.

4          THE COURT:  -- just to conclude officially the

5    allegations that are petitioned.

6          MS. CONNER:  Yes, ma'am.

7          THE COURT:  I can probably do this Tuesday or

8    Thursday.

9          MS. CONNER:  I would be available Tuesday

10   afternoon.  I have a custody case with Judge Richard

11   Dorrough Tuesday morning.

12         THE COURT:  Tuesday afternoon?

13         MS. CONNER:  Yes, ma'am.

14         THE COURT:  Mr. Brunson?

15         MR. BRUNSON:  That would be fine, Your Honor.

16         THE COURT:  Let's say two.

17         MS. CONNER:  Two o'clock?

18         THE COURT:  Yes.

19         MS. CONNER:  My custody starts at nine, and it's

20   supposed to be over by 12.  So I think that will be fine.

21         THE COURT:  Two o'clock tomorrow afternoon, 25 May

22   2004.  Until that time, the defendant is remanded to the

23   custody of the marshal.

24         MS. CONNER:  Your Honor, may I speak with him from

25   lockup prior to leaving?

```
 1                  THE COURT:  Oh, certainly.  Certainly.  You need
 2     to.
 3                  MS. CONNER:  Yes, ma'am.
 4                  THE COURT:  You just found out today?
 5                  MS. CONNER:  Yes, ma'am.
 6                  THE COURT:  Will you advise Mr. Dillon,
 7     Mr. Thweatt?
 8                  MR. THWEATT:  Yes, ma'am, I will.
 9                  THE COURT:  Will also ask Mr. Dillon to give me a
10     call this afternoon?
11                  MR. THWEATT:  I'm sorry, Your Honor.
12                  THE COURT:  Ask Mr. Dillon to give me a call this
13     afternoon.
14                  MR. THWEATT:  Yes, ma'am.
15                  THE COURT:  I think I have the petition, but it
16     may have gone back downstairs.
17                  MR. THWEATT:  Okay, Judge.
18                        (The proceedings concluded
19                         at 10:54 a.m.)
20                    * * * * * * * * * * *
21                    END OF PROCEEDINGS
22                    * * * * * * * * * * *
23
24
25
```

REPORTER'S CERTIFICATE

STATE OF ALABAMA

MONTGOMERY COUNTY

        I, Sherry Mack, Court Reporter and Commissioner

for the State of Alabama at Large, hereby certify that on

Monday, May 24, 2004, I reported the TESTIMONY AND

PROCEEDINGS in the matter of the foregoing cause, and that

pages 2 through 21 contain a true and accurate transcription

of said proceedings.

        I further certify that I am neither kin nor of

counsel to the parties to said cause, nor in any manner

interested in the results thereof.

        This 12th day of April, 2006.

SHERRY MACK, Court Reporter
Commissioner for the State of
Alabama at Large

MY COMMISSION EXPIRES: 1/06/08